ABERDEEN RESTAURANT CORPORATION, Plaintiff, *v.* MAX GOTT-FRIED, Individually, etc., and Another, Defendants.

Supreme Court, Special Term, New York County, July 1, 1935.

*Edward Elman,* for the plaintiff.

*Goldstein & Goldstein* [*Lawrence Kovalsky* of counsel], for the defendants.

SCHMUCK, J. This action is for an injunction seeking to restrain the defendants as representatives of a labor union from picketing plaintiff's restaurant, from doing any act which will tend to embarrass the conduct of the business and prevent or interfere with persons, potentially customers, from patronizing the establishment. Plaintiff is the proprietor of a restaurant situated at 17 West Thirty-second street and apparently has expended a large sum of money to make its place attractive in a locality where competition demands constant vigilance as the price of success. Defendants are a trade union affiliated with the American Federation of Labor and whose membership is exclusively composed of waiters and waitresses engaged in the restaurant trade. In furtherance of its policy to regulate the relationship of those engaged in the restaurant business and in anticipation of any weakening of its control, the union sought to unionize the plaintiff's employees. Recognizing the danger to their interests of non-union establishments, the defendants sought an agreement from plaintiff permitting the union to organize plaintiff's employees. Though willing to some extent, the plaintiff unalterably refused to give the union the right to exercise the power of dictating who were to be employed by the plaintiff, commonly called the right to " hire and fire." Obviously, this is conceived to be the backbone of union control. Without this authority the control of the union is bloodless. In consequence, the plaintiff and the union never could agree, and plaintiff's willingness to accept unionization of its employees without relinquishing its right to choose its own employees without qualification proved to be a proposal lacking fascination. Plaintiff proving adamant in its refusal to give the defendant union the right to hire and fire, the defendants resorted to the weapon which generally has been found effective. As soon as concordance was shown to be impossible pickets appeared in front of plaintiff's restaurant. Although the

evidence shows great enthusiasm and some slight indiscretion on the part of the pickets, who for the most part were not members of the union and may well be designated as professional pickets, it does not incline to the conclusion that the limit imposed by *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin* (245 N. Y. 260) was transgressed. True it is that testimony was elicited tending to show that at the instigation of the business agent of the union, resort was had to the use of a stench bomb. Suspicious as was this occurrence, the court is not willing to reject defendant's denial or believe that its officials did invite or approve such illegal and cowardly procedure. But be that as it may, defendants ask that the complaint be dismissed because plaintiff has failed to comply with the conditions precedent to the obtaining of an injunction against a labor union as prescribed by chapter 477 of the Laws of 1935. Plaintiff repulses this demand with the assertion that the statute has no application to the *lis sub judice* because the action was started before the enactment of the statute and cannot be deemed applicable even though prior to the trial. As an additional reason for unfavorable consideration, it is contended that the act is unconstitutional because it violates the inherent equity powers of the court. This demands careful examination of the statute which is known as section 876-a of the Civil Practice Act as added by section 2 of chapter 477 of the Laws of 1935. No matter how the law stood heretofore, it now is the law that no injunction can be granted against a labor union based upon affidavits. The law now commands a hearing at which it must appear by weight of evidence without the aid of presumption of law or fact that illegal acts have been committed by officers, agents or members of the labor organization, or that it has actually participated in such acts, or authorized their commission or ratified them with full knowledge of their commission. Unequivocally, and in full detail, the act sets forth the factors which must be established ere the injunction issue. It is unnecessary to do more than to make general reference to these provisions. They reflect the present policy of the State as set forth in the following preamble to the law: " Equity procedure that permits a complaining party to obtain sweeping injunctive relief that is not preceded by or conditioned upon adequate notice to and hearing of the responding party or parties, or that issues after hearing based upon written affidavits alone and not upon examination, confrontation and cross examination of witnesses in open court, is peculiarly subject to abuse in labor litigations." (Laws of 1935, chap. 477, § 1.)

Although a hearing in open court has been had and witnesses have appeared and been examined and cross-examined, there is good cause to believe that the conditions imposed by the statute have

not been complied with by the plaintiff. Although feeling secure in the contention that the action having been commenced prior to the enactment of the law, it could not be affected by the law, the plaintiff, nevertheless, finds nothing in section 876-a of the Civil Practice Act, as added in 1935, requiring any greater quantum of proof now than before the passage of the act.

In *Levering & Garrigues Co.* v. *Morrin* ([C.C.A.] 71 F. [2d] 284) the Norris-LaGuardia Federal Labor Injunction Act (U. S. Code, tit. 29, §§ 101–115), upon which the State statute is patterned, was held applicable to actions commenced prior to the passage of that act where no final decree had been entered. That authority also holds the Federal law constitutional. The court is not oblivious to the fact that there are certain elements in the basis of Federal equity jurisdiction which prevent a complete analogy between the authority cited and the issue here under consideration so as to make the Federal decision conclusive. The important distinction between Federal equity jurisdiction and that of this court is that the former is statutory, while the latter is constitutional. Naturally, whatever Congress has granted to the court of its own creation, it may control. It, therefore, follows that no constitutional right is infringed by a congressional curtailment of a remedy or a withdrawal of remedial rights from the jurisdiction of the District Court, since the litigant never had any absolute constitutional right to have a Federal court take jurisdiction. Vastly different is the position of the State court. Constitutionally, equity jurisdiction is an inherent element of the State court. If a litigant is entitled to an equitable remedy and has no adequate legal remedy, a destruction of such right of redress would be a denial of justice, and thus a violation of both State and Federal Constitutions. In fact, in *Duplex Printing Press Co.* v. *Deering* (254 U. S. 443; 41 S. Ct. 172; 65 L. Ed. 349; 16 A. L. R. 196) the Supreme Court of the United States so held. It there seemed to the court that the State statute practically granted " complete immunity of any civil or criminal action to the defendant, for it pronounced their acts lawful." In this matter, however, there is no deprivation of the right to an injunction. If such was the effect of chapter 477 of the Laws of 1935, it unquestionably would be unconstitutional. Here there is only an effort to limit the circumstances under which an injunction can be obtained.

While the requirements to obtain an injunction as prescribed by the statute herein involved may invite hardship, that is not germane to the question before the court. No interference with legislative policy can be tolerated. As the law stands, it is still possible to obtain an injunction after a hearing where violence,

fraud and breach of lawful contract is shown. It may well be that some of the requirements of the statute are so oppressive as to come under a constitutional ban. But this situation could not destroy the statute as a whole. Indeed, it is specifically provided that if any provision is held invalid, the remainder of the act and the application of such provisions shall not be affected thereby. Since section 876-a of the Civil Practice Act goes to the remedy and not to the substantive right, it applies to actions which have been instituted prior to its passage and which must, therefore, be controlled by the rules prescribed thereunder. In any event, equity must deal with the matter as it exists at the date of the trial, and not at the date when the action was instituted. Defendants' contention is sustained, since plaintiff has failed to comply with the law as it now exists. Judgment accordingly.

Submit findings of fact and conclusions of law on July 8, 1935. No costs.